# IN THE
# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Don Lippert,
  Plaintiff,

V.

Emmanuel Egbe,
Michelle Williams,
William Butler, Cletus
Shaw, Victor Calloway,
Nikki Robertson,
Shanal Barnett,
Candice Kaminski,
Lidia Lewandowska,
Jane Doe "Nurse",
Tarry Williams, and
T.S. Keen,
      Defendants.

RECEIVED

JUL 2 7 2015  EAA
7-27-15
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

15cv6576
Judge Sara L. Ellis
Magistrate Judge Sheila M. Finnegan
PC8

# COMPLAINT

Plaintiff Don Lippert, by pro se, complains against Defendants as follows:

# INTRODUCTION

1. In this civil rights action, Plaintiff suffers from Type I Diabetes who requires daily insulin shots and blood sugar tests. Defendants - certain Wexford Health Source, Inc. Medical employees, and certain Department of Corrections ("IDOC") officials that work at the facility which Plaintiff is incarcerated in or working for "IDOC" have on numerous occasions denied Plaintiff his insulin shots, and access to medical care and knowingly disregarded excessive risks to Plaintiff's health by, among other things, (a) knowingly and deliberately refusing to provide Plaintiff with daily insulin shots and blood sugar tests, (c) knowingly and deliberately refusing to comply with "IDOC" policies, procedures, directives, and rules relating to medical orders, & medical care while on Institutional Lockdowns.

2. Plaintiff brings **COUNT I** of this action, against Defendants Egbe, Williams, Butler, Shaw, Calloway, Robertson, Barnett, Warden Williams and T.S. Keen for their

deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment and Fourteenth Amendment, May 15, 2014, violations.

3. In connection with **COUNT I**, Plaintiff seeks damages and injunctive relief, as well as, attorney fees, and court costs from Defendants violations.

4. Plaintiff brings **COUNT II** of this action, against Defendants Egbe, Butler, Kaminski, Williams, Jane Doe "Nurse", Warden Williams, and T.S. Keen for their deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment and Fourteenth Amendment, May 16, 2014, violations.

5. In connection with **COUNT II**, Plaintiff seeks damages and injunctive relief, as well as, attorney fees, and court costs from Defendants violations.

6. As a result of Defendant's actions and failures to act, Plaintiff suffered and still suffers serious harm and injuries.

## JURISDICTION, VENUE, and EXHAUSTION of REMEDIES

7. This action is brought pursuant to 42 U.S.C. §1983. This Court has jurisdiction pursuant to 28 U.S.C. 1331, on belief, more than one Defendant resides in this judicial district, and all the Defendants resides in Illinois. Moreover, a substantial part of the events or omissions giving rise to the claim occured in the judicial district. Accordingly, venue is proper under 42 U.S.C. § 1391 (b)(1) and (2).

8. Prior to filing this Complaint, Plaintiff had exhausted any necessary administrative grievance procedures, and administrative remedies.

## PARTIES

9. Plaintiff, Don Lippert is and has at all relevant times been a citizen of the U.S.. He is and was at all relevant times an inmate at Stateville Correctional Center in Crest Hill, Illinois. On May 15, 2014, and on May 16, 2014, Plaintiff was housed at Stateville.

10. On information and belief, Defendant Emmanuel Egbe is a contractor for Stateville, acting as a Licensed Practical Nurse. On May 15, 2014, and on May 16, 2014, he had medical responsibilities, including administration of inmates' daily medical care. Plaintiff sues Egbe in his individual capacity.

11. On information and belief, Defendant Michelle Williams is a contractor for Stateville, acting as a Licensed Practical Nurse. On May 15, 2014, and on May 16, 2014, she had medical responsibilities, including administration of inmates' daily medical care. Plaintiff sues Williams in her individual capacity.

12. Defendant William Butler is, a correct-

ional sergeant at Stateville employed by IDOC. He was the acting sergeant for Plaintiff's CellHouse, and had security responsibilities, including the daily safety and wellbeing of inmates' care under his supervision on May 15, 2014, and on May 16, 2014. Plaintiff sues Butler in his individual and official capacity.

13. Defendant, Cletus Shaw is, a correctional Lieutenant at Stateville employed by IDOC. He was the acting lieutenant for Plaintiff's CellHouse, and had security responsibilities, including the daily safety and wellbeing of inmates' care under his supervision on May 15, 2014. Plaintiff sues Shaw in his individual and official capacity.

14. Defendant Nikki Robertson, was at all relevant times employed at Stateville as a Assistant Warden by IDOC. At all relevant times, she acted under color of state law, as a state official acting on behalf of the state. On May 15, 2014, she had security responsibilities, including the daily safety

and well-being of inmates' care under her supervision. Plaintiff sues Robertson in her individual and official capacity.

15. Defendant Victor Calloway, was at all relevant times employed at Stateville as a Assistant Warden by IDOC. At all relevant times, he acted under color of state law, as a state official acting on behalf of the state. On May 15, 2014, he had security responsibilities, including the daily safety and wellbeing of inmates' care under his supervision. Plaintiff sues Calloway in his individual and official capacity.

16. Defendant Shanal Barnett, was at all relevant times employed at Stateville as a Correctional Medical-Technician by IDOC. At all relevant times, she acted under color of state law, as a state official acting on behalf of the state. On May 15, 2014, she had medical responsibilities, including administration of inmates' daily medical care. Plaintiff sues Barnett in her individual and official capacity.

17. On information and belief, Defendant Candice Kaminski is a contractor for Stateville, acting as a Registered Nurse. On May 16, 2014, she had medical responsibilities, including administration of inmates' daily medical care. Plaintiff sues Kaminski in her individual capacity.

18. On information and belief, Defendant Lidia Lewandowska is a contractor for Stateville, acting as a Registered Nurse. On May 16, 2014, she had medical responsibilities, including administration of inmates' daily medical care. Plaintiff sues Lewandowska in her individual capacity.

19. On information and belief, Defendant "Jane Doe Nurse" is a contractor for Stateville, acting as a Nurse. On May 16, 2014, she had medical responsibilities, including administration of inmates' daily medical care. Plaintiff sues "Jane Doe Nurse" in her individual capacity.

20. Defendant Tarry Williams, was at all

relevant times employed at Stateville as the Chief Administrative Officer. At all relevant times, he acted under color of state law, as a state official acting on behalf of the state. Defendant Williams is responsible for the overall operations of the facility, the supervision and protection of offenders assigned to his institution. The supervision of it's staff members, and ultimately for overseeing both program and operational services of the facility, as well as ensuring compliance is followed with all directives, policies and rules. On May 15, 2014, and on May 16, 2014, he was responsible for placing medical movement restrictions on Plaintiff's medical treatment/care at Stateville, and Plaintiff sues Warden Williams in his individual and official capacity.

21. Defendant T.S. Keen, was at all relevant times employed by the IDOC as the Administrative Review Board member of the Inmate Grievance issues. At all relevant times, he acted under color of state law, as a state official acting on behalf of the state. Defendant Keen was directly respon-

sible for the reviews of appeals of grievances and first determines whether the inmates' grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are examining relevant documents and at the A.R.B.'s discretion, calling witnesses. The A.R.B. submits a written report of its findings and recommendations to the Director or the Director's designee, who then reviews the report and makes a final determination on the grievances. On the day of July 24, 2014, defendant Keen, had reviewed my grievance (EMERGENCY), but denied it! Plaintiff sues Keen in his individual and official capacity.

**22.** At all relevant times, Defendant's acted in their individual and official capacitys in their positions as nurses, medical-technicians, guards and IDOC administrative officials.

**23.** As of and prior to May 15, 2014, and May 16, 2014, Plaintiff required two

daily insulin shots with blood sugar level tests for the purpose of treating and managing of Plaintiff's chronic illness of Type I Diabetes, and provide other medical care as needed, necessary to Keep Plaintiff healthy and safe from serious injury to control his Type I Diabetes condition.

## COUNT I
## DEFENDANTS' FAILURE TO PROVIDE NECESSARY MEDICAL CARE ON MAY 15, 2014
(Alleged on Behalf of Defendants Egbe, Williams, Butler, Shaw, Robertson, Calloway, Barnett, Warden Williams and Keen)

**24.** Plaintiff repeats and re-alleges the allegations contained in paragraphs (1 through 23) as if fully restated here.

**25.** Plaintiff has been diagnosed with Type I Diabetes. At all relevant times hereto each of the Defendants' Knew of and were aware of Plaintiff's serious medical condition.

26. Prior to May 15, 2014, Plaintiff was prescribed to receive two insulin shots and blood sugar level tests for his diabetes, including but not limited to daily visits by nurses and/or CMT's for the purpose of testing Plaintiff's blood sugar level and administering insulin shots in the A.M. and P.M., and providing other medical care as needed.

27. Frequent testing and timely insulin shots were critical to Plaintiff's safety and health. As an incarcerated prisoner, Plaintiff was at the mercy of Defendants and other correctional staff to provide that testing and insulin shots to keep Plaintiff healthy and safe from serious injury.

28. Defendants were deliberately indifferent to Plaintiff's serious medical needs by knowingly refusing to follow Institutional policies, rules, directives and procedures while the prison was on Level 1 Lockdown by denying Plaintiff his timely prescribed testing and insulin shot.

29. On May 15, 2014, ~~and Defendant~~ (D.L) ~~(D.L) XXXX,~~ Defendant Emmanuel Egbe was assigned to come to Plaintiff's cell to provide Plaintiff his insulin shots because of Institutional Lockdown.

30. Defendant Egbe clearly Knew that Plaintiff was an insulin dependent diabetic, but deliberately refused to provide Plaintiff with his insulin shots at his cell..

31. Defendant Egbe deliberately refused to provide Plaintiff with his insulin shots because defendant did not want to walk up a flight of stairs and walk down Plaintiff's gallery to give Plaintiff his insulin shots at his cell.

32. Defendant Egbe ~~deliberately~~ (D.L) acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's constitutional rights.

33. As a result of Defendant's deliberate

- 13 -

indifference towards Plaintiff's life and wellbeing, the plaintiff suffered severe diabetic complications of hyperglycemia, which caused Plaintiff to become very weak, dizzy and caused him to collapse on the floor.

34. After an unreasonable amount of time later, at about 8 A.M., Plaintiff informed Defendant William Butler that Plaintiff needed medical attention due to the 11-7 shift medical personnel refusing to give me my insulin shot.

35. On May 15, 2014, Defendant Butler had knowledge of Plaintiff's serious medical situation through, among other things, (a) plaintiff's constant yelling for a Med-Tech and nurse, and (b) plaintiff's constant yelling to be taken up to the Health Care Unit to get insulin shot.

36. Defendant Butler was well aware that Plaintiff was denied his diabetes medicine by 11-7 shift medical and knowingly

-14-

disregarded excessive risks to Plaintiff's health and wellbeing by, among other things, (a) wanting to play the role of the "Gate Keeper", (b) refusing to take appropriate corrective action measures and (c) knowingly and deliberately refusing to use sound decision making in his duty and obligation to assist.

37. Defendant Butler acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's Constitutional rights.

38. As a result of Defendant actions and failure to act, Plaintiff suffered and still sufferes injuries of further worsening Diabetic neuropathy, severe headaches, depression.

39. On May 15, 2014, Defendant Michelle Williams had knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff informing her that he was denied his insulin shot by 11-7 Shift medical and that he feels very weak and dizzy.

**40.** Defendant Williams was well aware that Plaintiff was denied his diabetes medicine by 11-7 shift medical and knowingly disregarded excessive risks to Plaintiff's health and wellbeing by, among other things, (a) refusing to take appropriate corrective action measures, (b) knowingly and deliberately refusing to use sound decision making by trying to obtain his diabetes medicine, (c) allowing and condoning the actions of the medical department, and the IDOC employees gross misconduct of denying Plaintiff's medical care/treatment.

**41.** Defendant Williams acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's constitutional rights.

**42.** As a result of Defendant actions and failure to act, Plaintiff suffered and still sufferes injuries of further worsening Diabetic Neuropathy, severe headaches, and depression.

**43.** On May 15, 2014, Defendant Cletus

Shaw had Knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff's constant yelling for a Med-Tech and a Nurse, (b) Plaintiff's constant yelling to be taken up to the Health Care Unit to get his insulin shot, and (c) Defendant threatens Plaintiff with Disciplinary action if he does not stop yelling.

44. Defendant Shaw was well aware that Plaintiff was denied his diabetes medicine by 11-7 shift medical and Knowingly disregarded excessive risks to Plaintiff's health and wellbeing by, among other things, (a) wanting to play the role of "The Gate Keeper", (b) refusing to take appropriate corrective action measures, (c) made threats against Plaintiff because of his yelling for his insulin shot, and (d) Knowingly and deliberately refusing to use sound decision making in his duty and obligation to assist.

45. Defendant Shaw acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's

Constitutional rights.

46. As a result of Defendant actions and failure to act, Plaintiff suffered and still sufferes injuries of further worsening of Diabetic Neuropathy, severe headaches, and depression.

47. On May 15, 2014, Defendant NiKKi Robertson had Knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff's constant yelling for a Med-Tech and a Nurse, (b) Plaintiff had informed her that he was a insulin dependent diabetic who was denied his diabetes medicine by medical personnel on 11-7 shit, (c) Plaintiff had informed her that he needs his insulin shot immediately, because of feeling weak and dizzy, (d) Plaintiff had informed her that B-House security is refusing to to me up to the Health Care Unit, because of lockdown/no movement, and (e) Defendant had informed Plaintiff that he should sit down if he feels weak and dizzy so he won't get hurt, and (f) Plaintiff's constant yelling to be taken to the Health Care Unit to get his insulin shot.

48. Defendant Robertson was well aware that Plaintiff was denied his diabetes medicine by 11-7 shift medical, and knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) knowingly and deliberately refusing to use sound decision making by trying to obtain Plaintiff's diabetes medicine, and (b) allowing and condoning the actions of the medical department, and the B-House security gross misconduct of denying Plaintiff's medical care/treatment, and (c) defendant had informed Plaintiff that he should sit down if he feels weak and dizzy so he won't get hurt.

49. Defendant Robertson acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's Constitutional rights.

50. As a result of Defendant actions and failure to act, Plaintiff suffered severe hyperglycemia and still suffers further injuries of (D.L.) worsening Diabetic

Neuropathy, severe headaches, and depression.

51. On May 15, 2014, Defendant Victor Calloway had knowleged of Plaintiff's serious medical situation through, among other things, (a) Plaintiff's constant yelling for a Med-Tech and a Nurse, (b) Plaintiff's constant yelling to be taken to the Health Care Unit to get his insulin shot, (c) Plaintiff had informed him that he was a insulin dependent diabetic who was denied his diabetes medicine by medical personnel on 11-7 Shift, (d) Plaintiff had informed him that he needs his insulin shot immediately, because of feeling weak and dizzy, (e) Plaintiff had informed him that he had told B-House security of my medical emergency, and they just did not care, (f) Plaintiff had informed him that he was threaten with disciplinary action and that Plaintiff did not like to be threatened and intimidated by security because I am yelling to get my diabetes medicine that was deliberately denied to me, and (g) Defendant had informed Plaintiff that was not a threat, but a direct order to stop yelling.

52. Defendant Calloway was well aware that Plaintiff was denied his diabetes medicine by 11-7 Shift medical, and knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) knowingly and deliberately refusing to use sound decision making by trying to obtain Plaintiff's diabetes medicine & (b) allowing and condoning the actions of the medical department, and the B-House security gross misconduct in denying Plaintiff's medical care/treatment.

53. Defendant Calloway acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's Constitutional rights.

54. As a result of Defendant actions and failure to act, Plaintiff suffered severe hyperglycemia and still suffers further injuries of worsening Diabetic Neuropathy, severe headaches, and depression.

55. On July 10, 2014, Defendant Tarry

Williams had knowledge of Plaintiff's serious medical situation through, among other things, (a) receiving Plaintiff's "EMERGENCY GRIEVANCE".

56. Defendant Warden Williams was well aware that Plaintiff was being deliberately denied his diabetes medicine by 11-7 Shift Medical personnel on May 15, 2014, and on May 16, 2014, and knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) Defendant had denied Plaintiff's "EMERGENCY GRIEVANCES" on July 2nd or 3rd, 2014, and on July 14, 2014, (b) Knowingly and deliberately refused to take any corrective ~~measures~~ action measures, ~~and~~ (c) Knowingly and deliberately refusing to use sound decision making in his duty and obligation to assist, and (d) allowing and condoning the actions of the medical department, and B-House security gross misconduct in denying Plaintiff's medical care/treatment.

57. Defendant Warden Williams acted at

all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's constitutional rights.

58. As a result of Defendant actions and failure to act, Plaintiff suffered severe hyperglycemia and still suffers further injuries of worsening Diabetic Neuropathy, severe headaches, and depression.

59. On September 29, 2014, Defendant T.S. Keen had knowledge of Plaintiff's serious medical situation through, among other things, (a) the appeal of Plaintiff's "EMERGENCY GRIEVANCES" to the Administrative Review Board Office, and (b) Defendant's denial of Plaintiff's "EMERGENCY GRIEVANCES".

60. Defendant Keen was well aware that Plaintiff was being denied his diabetes medicine by IDOC/Wexford/Stateville Medical Personnel on May 15, 2014, and on May 16, 2014, and knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other

things, (a) Defendant had denied Plaintiff's EMERGENCY GRIEVANCES on September 29, 2014, (b) Knowingly and deliberately refusing to take appropriate corrective action measures, (c) Knowingly and deliberately refusing to use sound decision making in his duty and obligation to assist, and (d) allowing and condoning the actions of gross misconduct by Wexford and IDOC employees in denying Plaintiff's medical care / treatment.

61. Defendant Keen acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's constitutional rights.

62. As a result of Defendant actions and failure to act, Plaintiff suffered and still suffers further worsening injuries of Diabetic Neuropathy, severe headaches, and depression.

63. COUNT I Defendants ongoing deliberate indifference to Plaintiff's medical needs has deprived Plaintiff of his right to

63. On May 15, 2014, Defendant Shanal Barnett had Knowledge of Plaintiff's serious medical situation through, among other things, (a) responding to B-House Security Call for a Medical Emergency Response to my cell, (b) being informed by cellmate of Plaintiff that he was denied his insulin shot by medical on 11-7 Shift, and (c) Defendant tested blood sugar level on Plaintiff which was high.

64. Defendant Barnett was well aware that Plaintiff was denied his diabetes medicine by 11-7 Shift medical and Knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) refusing to follow medical protocols, policies and procedures after realizing how high my blood sugar level was, and to provide the proper medical care/treatment to Plaintiff, (b) Defendant had Knowingly and deliberately refused Plaintiff medical care by leaving Plaintiff on the floor in his cell in pain.

65. Defendant Barnett acted at all relevant times with evil motive or intent, or

recklessly or with callous indifference to Plaintiff's constitutional rights.

66. As a result of Defendant actions and failure to act, Plaintiff suffered and still suffers further worsening injuries of Diabetic Neuropathy, severe headaches, and depression.

67. COUNT 1 Defendants' ongoing deliberate indifference to Plaintiff's medical needs has deprived Plaintiff of his right to be free from cruel and unusual punishment as secured to him under the Eighth and Fourteenth Amendments to the United States Constitution, and has resulted in actual physical, mental, and medical harm to Plaintiff.



be free from cruel and unusual punishment as secured to him under the Eighth and Fourteenth Amendments to the United States Constitution, and has resulted in actual physical, mental, and medical harm to Plaintiff D.L.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare the conduct of Count I Defendants' to have violated the rights guaranteed to Plaintiff under the Eighth and Fourteenth Amendments to the United States Constitution;

B. Grant an Order: **(i)** enjoining and prohibiting Count I Defendants, their ~~actors~~ successors, and other current and future employees of IDOC and Wexford from further depriving Plaintiff of his constitutional rights; **(ii)** requiring Count I Defendants, their successors to ensure that Plaintiff receive his daily medical treatment on a timely basis and in accordance

with IDOC's and Wexford's Medical
and Institutional Lockdown policies,
rules, and procedures;

C. Award Plaintiff actual, consequential,
compensatory, punitive, and any
other damages that the Court may
deem appropriate against Count 1
Defendants; and

D. Award Plaintiff his costs and reason-
able attorneys' fees pursuant to 42
U.S.C. § 1988.

## COUNT II
## DEFENDANTS' FAILURE TO PROVIDE
## NECESSARY MEDICAL CARE ON
## MAY 16, 2014
(Alleged on Behalf of Defendants Egbe,
Butler, Kaminski, Williams, Lewandowska,
Jane Doe, Warden Williams and Keen )

68. Plaintiff repeats and re-alleges the
allegations contained in paragraphs (1 through

63) as if fully restated here.

69. On May 16, 2014, Defendant Egbe was assigned to come to Plaintiff's cellhouse to provide Plaintiff his insulin shot on 11-7 shift, because of institutional lockdown, at his cell.

70. Defendant Egbe clearly knew that Plaintiff was an insulin dependent diabetic, but knowingly and deliberately refused to provide Plaintiff with his insulin shot, because Defendant did not want to walk up a flight of stairs and walk down Plaintiff's gallery to give him his insulin shot at his cell while on lockdown.

71. Defendant Egbe acted at all relevant times with evil motive or intent, or recklessly or with callous indifference to Plaintiff's constitutional rights.

72. As a result of Defendant deliberate indifference towards Plaintiff's life and well-being, the Plaintiff suffered severe diabetic complications of hyperglycemia, which caused

the Plaintiff to become very weak, dizzy and caused him to collapse on the floor in severe pain.

73. ~~69~~. As a result of Defendant actions, Plaintiff suffered and still suffers injuries of further worsening of Diabetic Neuropathy, severe headaches, and depression.

74. ~~70~~. On May 16, 2014, Defendant Butler had Knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff informing him that Plaintiff was refused his insulin shot by 11-7 Shift Medical personnel, (b) Plaintiff's constant yelling for a Med-Tech and/or a Nurse to come to Plaintiff's cell, and (c) Plaintiff's constant yelling for Defendant to take Plaintiff up to Health Care Unit to receive his insulin shot.

75. ~~71~~. Defendant Butler was well aware that Plaintiff was denied his diabetes medicine by 11-7 Shift Medical, and Knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among

other things, (a) wanting to play the role of "The Gate Keeper", (b) Knowingly and deliberately refusing to take appropriate corrective action measures, (c) Knowingly and deliberately refusing to use sound decision making in his duty and obligation to assist, and (d) allowing and condoning the actions of the medical personnel gross misconduct of denying Plaintiff's Medical care/treatment.

**72.** On May 16, 2014, Defendant Candice Kaminski had Knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff informing her that he was denied his insulin shot by 11-7 Shift medical, and that he feels very weak and dizzy, and (b) Plaintiff informing her that she needs to tell security to take me up to the Health Care Unit to get my insulin shot.

**73.** Defendant Kaminski was well aware that Plaintiff was denied his diabetes medicine by 11-7 Shift medical and Knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other

things, (a) Knowingly and deliberately refusing to take appropriate corrective action measures, (b) Knowingly and deliberately refusing to use sound decision making in her duty and obligation to assist, and (c) allowing and condoning the actions of the medical department and the IDOC's employees gross misconduct of denying Plaintiff's medical care/treatment.

**78.** On May 16, 2014, Defendant Michelle Williams had knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff's constant yelling for the need of a CMT or Nurse to come to Plaintiff's cell (b) being present in the Medical Office when inmate "Shakey" came to the door and informed her of Plaintiff's medical need, and (D.L.)
~~XXX~~ (D.L.)

**79.** ~~78~~. Defendant Williams was well aware that Plaintiff was denied his diabetes medicine by 11-7 Shift Medical, and knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) Knowingly and deliberately refusing to take appropriate corrective action mea-

sures, (b) Knowingly and deliberately refusing to use sound decision making in her duty and obligation to assist, and (c) allowing and condoning the actions of the medical department and IDOC's employees' gross misconduct of denying Plaintiff's medical care / treatment.

80. On May 16, 2014, Defendant Lidia Lewandowska had knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff's constant yelling for the need of a CMT or Nurse to come to Plaintiff's cell, and (b) being present in the Medical Office when inmate "Shakey" came to the door and informed her of Plaintiff's medical need.

81. Defendant Lewandowska was well aware that Plaintiff was denied his diabetes medicine by 11-7 shift medical and knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) Knowingly and deliberately refusing to take appropriate corrective

action measures, (b) Knowingly and deliberately refusing to use sound decision making in her duty and obligation to assist, and (c) allowing and condoning the actions of the I.D.O.C. medical department and IDOC's employees gross misconduct of denying Plaintiff's medical care / treatment.

82. On May 16, 2014, Defendant Jane Doe "Nurse" had knowledge of Plaintiff's serious medical situation through, among other things, (a) Plaintiff's constant yelling for the need of a CMT or Nurse to come to Plaintiff's cell, (b) being present in the Medical Office when inmate "Shatley" came to the door and informed her of Plaintiff's medical need, and (c) testing Plaintiff's blood sugar level.

83. Defendant Jane Doe "Nurse" was well aware that Plaintiff was denied his diabetes medicine by 11-7 Shift Medical and knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) Knowingly and deliberately refusing to take appropriate corrective act-

ion measures, (b) Knowingly and deliberately refusing to use sound decision making in her duty and obligation to assist after finding out that Plaintiff's blood sugar level of 291 warranted emergency medical attention, and (c) allowing and condoning the actions of the medical department and the IDOC's employees gross misconduct of denying Plaintiff's medical care/treatment.

84. On July 1, 2014, Defendant Tarry Williams had knowledge of Plaintiff's serious medical situation through, among other things, (a) receiving Plaintiff's "EMERGENCY GRIE-VANCE".

85. Defendant Warden Williams was well aware that Plaintiff was being deliberately denied his diabetes medicine by 11-7 Shift Medical Personnel on May 16, 2014, and Knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) Defendant had denied Plaintiff's "EMERGENCY GRIEVANCE" on July 2nd or 3rd, 2014, (b) Knowingly and

deliberately refusing to use sound decision making in his duty and obligation to assist, (c) Knowingly and deliberately refusing to take any corrective action measures, and (d) allowing and condoning the actions of the medical department, and B-House Security gross misconduct of denying Plaintiff's medical care / treatment.

86. On July 24, 2014, and on September 29, 2014, Defendant T.S. Keen had Knowledge of Plaintiff's serious medical situation through, among other things, (a) receiving the appeal of Plaintiff's "EMERGENCY GRIEVANCES" to the Administrative Review Board Office, and (b) Defendant's denial of Plaintiff's "EMERGENCY GRIEVANCES".

87. Defendant Keen was well aware that Plaintiff was being denied his diabetes medicine by IDOC / Wexford / Stateville Medical personnel on May 16, 2014, and Knowingly and deliberately disregarded excessive risks to Plaintiff's health and well-being by, among other things, (a) Defendant

had denied Plaintiff's EMERGENCY GRIEV-
ANCES on September 29, 2014, (b) Know-
ingly and deliberately refusing to take ap-
propriate corrective action measures, (c)
Knowingly and deliberately refusing to use
sound decision making in his duty to
and obligation to assist, and
(d) allowing and condoning the actions of
gross misconduct by Wexford and IDOC
employees in denying Plaintiff's medical
care/treatment.

**88.** Each COUNT II Defendants' had
acted at all relevant times with evil mo-
tive or intent, or recklessly or with cal-
lous indifference to Plaintiff's constitutional
rights.

**89.** Defendants Egbe, Williams, Butler,
Warden Williams, and Keen each intentionally,
through repeated acts of negligence, or
with deliberate indifference to the serious
medical needs of Plaintiff, disregarded
and failed to follow medical policies, pro-
cedures, rules and directives, and failed

to take steps to ensure that Plaintiff's treatment plans is properly carried out, including providing timely administration of medications, insulin shots, and other necessary medical treatment on a ~~toooooo~~ D.L. ~~loooooo~~ D.L. daily basis.

90. **COUNT II** Defendants' continued failure to provide Plaintiff adequate medical treatment causes him to suffer ongoing injuries related to Plaintiff's serious medical condition, including, without limitation diabetic neuropathy, severe headaches, poorer eyevision and depression. In fact, Plaintiff's injuries, caused by Defendants' nonfeasance, have required emergency treatment on several occasions.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

    A. Declare that the conduct of Count II Defendants' to have violated the rights guaranteed to Plaintiff under the Eighth

and Fourteenth Amendments to the United States Constitution;

B. Grant an Order: (i) enjoining and prohibiting Count II Defendants', their successors, and other current and future employees of IDOC and Wexford from further depriving Plaintiff of his constitutional rights; (ii) requiring Count II Defendants' and their successors to ensure that Plaintiff receive his daily medical treatment on a ~~daily~~ (D.L.) timely basis and in accordance with IDOC's and Wexford's medical policies, procedures and rules;

C. Award Plaintiff actual, consequential, compensatory, punitive, and any other damages that the Court may deem appropriate against Count II Defendants'; and

D. Award Plaintiff his costs and

reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

Plaintiff Hereby Requests A Trial By Jury

## PROOF/CERTIFICATE OF SERVICE

TO: _____

U.S. District Court Clerk
219 S. Dearborn Street
Chicago, Il. 60604

PLEASE TAKE NOTICE that on _____, 2015, I have placed the documents listed below in the institutional mail at Stateville Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service: _____

_____

Pursuant to 28 U.S.C. 1746, 18 U.C.S. 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my Knowledge.

DATE: _____

/s/ Don Lippert

NAME: Don Lippert

IDOC#: B-74054

Stateville Correctional Center

P.O. Box 112

Joliet, Il. 60434